UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michel Sales Company, | Case No. 24-CV-03657 (JMB/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Ningbo GI Power Co. Ltd., <br> Ningbo GI Power Import & Export Co. Ltd., <br> Deko Group LLC, and Deko Electric LLC, | |
| Defendants. | |

Kristine M. Boylan and O. Joseph Balthazor, Jr., Taft Stettinius & Hollister LLP, Minneapolis, MN; and Mike Etienne and Neil Peluchette, Taft Stettinius & Hollister LLP, Indianapolis, IN, for Plaintiff Michel Sales Company.

This matter is before the Court on Plaintiff Michel Sales Company's (Michel) motion for a preliminary injunction against Defendants Ningbo GI Power Co. Ltd., Ningbo GI Power Import & Export Co. Ltd., Deko Group LLC, and Deko Electric LLC (together, Ningbo) for their alleged copyright infringement, trademark infringement, trade dress infringement, deceptive trade practices, and unfair competition. (Doc. No. 14.) For the reasons discussed below, the Court grants Michel's motion.

BACKGROUND

In 1857, Michel opened its doors in St. Paul, Minnesota, as "Michel Family General Store." (Doc. No. 12 [hereinafter, "Am. Compl."] ¶ 2.) Since that time, Michel has adapted its business, expanding into the plumbing and pump industries. (*Id.* ¶¶ 2, 3.) In 1989, Michel founded Decko Products (Decko) by an industry acquisition. (*Id.* ¶ 2.) A decade

1

later, Michel and Decko formed Superior Pump Company. (*Id.*) Today, Michel sells and advertises its products on online marketplaces, such as Amazon.com. (*Id.* ¶ 30.)

Michel owns various trademarks, copyrights, and product configuration (trade dress) rights. At issue here are the following: two trademarks (the DECKO® mark[1] and the BUILT TO LAST® mark);[2] three copyrights covering product catalogs and manuals;[3] and trade dress rights in the product configuration of the "DECKO®" water pump.

In 2023, Michel learned that Ningbo was copying its advertising materials and using them in Amazon listings to sell a competing pump product. (Doc. No. 16-3 ¶ 4.) Michel obtained samples of Ningbo's pump and learned that Ningbo was also copying its product manuals, product descriptions, and product configuration. (*Id.*; Doc. No. 16-4 ¶ 7.) Michel also learned that Ningbo's pump displays a safety certification symbol when it does not have authority to use that symbol. (Doc. No. 16-4 ¶ 8, Ex. 1.) Michel used Amazon's enforcement channels to remove Ningbo's listings. (Doc. No. 16-3 ¶ 6.) However, Ningbo challenged Michel's enforcement efforts and Amazon eventually reinstated Ningbo's listings. (*Id.* ¶¶ 7, 10.) Michel's customer service personnel receive calls multiple times per week from individuals calling about Ningbo's products. (*Id.* ¶ 13.)

---

[1] Codified in U.S. Trademark Registration No. 5153580 (registered on March 7, 2017), U.S. App. No. 98545013, U.S. App. No. 98522359, U.S. App. No. 98522354, and U.S. App. No. 98522356. (Am. Compl. ¶¶ 9, 10, Ex. B; Doc. No. 16-2 ¶ 3.)

[2] Codified in U.S. Trademark Registration No. 4991244 (registered on July 5, 2016). (Am. Compl. ¶ 9, Ex. B at 95.)

[3] Codified in U.S. Copyright Registration Numbers TX 9-390-864 (registered on May 7, 2024), TX 9-390-866 (registered on May 7, 2024), and TX 9-426-009 (registered on September 10, 2024). (Am. Compl. ¶ 8, Ex. A at 2–8.)

In October 2024, Michel filed an Amended Complaint, asserting claims against Ningbo for alleged copyright infringement, trademark infringement, trade dress infringement, deceptive trade practices, and unfair competition. (*See* Am. Compl.) Michel also filed a motion for a preliminary injunction.[4] (Doc. No. 14.) In it, Michel seeks an order restraining and enjoining Ningbo, and others acting in concert with Ningbo, from (1) using Michel's DECKO® and BUILT TO LAST® trademarks, or any phonetically similar terms (including DEKO and DEKOPRO), in its advertising, product title, product labeling, or product description of any water pump product that it markets or sells online; (2) using Michel's copyrighted images, product descriptions, product manuals, product catalogs, or other copyrighted materials in connection with any water pump product that it markets or sells online; and (3) from interfering with Michel's take-down submissions on Amazon.com. (*Id.* ¶¶ 2, 3, 4.) None of the Defendants have responded to the initial Complaint, the Amended Complaint, or the preliminary injunction motion, despite service of these pleadings. (*See* Doc. Nos. 5, 6, 19, 20, 24, and 25.)

---

[4] Before filing its Amended Complaint in September 2024, Michel filed its initial Complaint, which named the same four defendants that are named in the Amended Complaint. (Doc. No. 1.) The initial Complaint was properly served on Deko Group LLC and Deko Electric LLC, but those defendants failed to appear, plead, or otherwise defend. (Doc. Nos. 5, 6.) Consequently, Michel applied for entry of default against them. (Doc. Nos. 8, 9.) The Clerk filed entry of default. (Doc. No. 10.) Michel has since applied for entry of default against those defendants again, as they have failed to appear, plead, or otherwise defend against the allegations in the Amended Complaint. (Doc. No. 27.)

3

## DISCUSSION

I.   **PRELIMINARY INJUNCTION**

When considering whether to grant a motion for preliminary injunction, the Court considers four factors: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on the party that is enjoined; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The key question is whether the weight of these factors "so favor[] the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113. Such intervention is considered an "extraordinary remedy," and the movant bears the burden of establishing their entitlement to the relief sought. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The Court concludes that all four factors favor granting Michel's motion.

A.   **Probability of Success on the Merits**

The first factor requires the Court to consider how probable it is that Michel will prevail on the merits of its claims. *Dataphase*, 640 F.2d at 114. This factor is regarded as the "most significant" to the Court's ultimate determination whether to grant a motion for injunctive relief. *CPI Card Grp. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018). At this stage, the inquiry is not whether Michel will ultimately win. *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991); *Dataphase*, 640 F.3d at 113

4

(providing that probability-of-success factor does not require movant to demonstrate a "greater than fifty per cent likelihood that he will prevail on the merits").

Michel asserts that it will likely prevail on the following claims, which establish its right to injunctive relief: (1) copyright infringement; (2) trademark infringement; (3) trade dress infringement; (4) deceptive trade practices; and (5) unfair competition. (Doc. No. 16 at 10–47.) Michel's factual assertions and legal arguments are uncontested. In the absence of arguments or assertions to the contrary, the Court is persuaded that it is probable that Michel will succeed on its claims.

### B.     Threat of Irreparable Harm

The second factor requires the Court to consider the threat of irreparable harm to Michel. *Dataphase*, 640 F.2d at 114. Importantly, in trademark infringement cases, courts presume a threat of irreparable harm where it has found that a likelihood of confusion exists. *See Warner Bros. Ent., Inc. v. X One X Prods.*, 840 F.3d 971, 982 (8th Cir. 2016) ("A finding that likelihood of confusion exists results in a presumption that a threat of irreparable harm exists."). Courts also presume a threat of irreparable harm in cases where copyright infringement has occurred. *See Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005) ("[I]rreparable harm inescapably flows from the denial of th[e] right [to control the use of copyrighted materials]."). These principles apply to Michel's claims, as evidenced by Michel's receipt of frequent customer service complaints about the Defendants' products. Thus, having already found that Michel is likely to prevail

on those claims and, in the absence of any argument to the contrary, the Court concludes that a threat of irreparable harm to Michel exists.

### C. Balance of Harms

The third factor requires the Court to consider the balance between Michel's harm and the harm that granting the injunction will cause Ningbo. *Dataphase*, 640 F.2d at 114. Where a party engaged in intellectual property theft may sell or create other non-infringing products, the harm to that party is minimal. *E.g.*, *Taylor Corp.*, 403 F.3d at 968. Moreover, the harm of denying the preliminary injunction outweighs the harm to the party opposed to the injunction in cases where the opposing party's actions are at the root of the identified harms. *See Sierra Club v. U.S. Army Corp. of Eng'rs.*, 645 F.3d 978, 997 (8th Cir. 2011) (finding defendant's harm to be "self inflicted" where it chose to proceed with $800 million construction project despite warnings that doing so would be at its own risk). Here, the record supports a conclusion that Ningbo's harm will be minimal, as it may continue to sell its other non-infringing products or create new non-infringing products. Moreover, Ningbo's actions appear to be self-inflicted. Thus, based on the record before the court and absent any argument to the contrary, the balance of harms weighs in favor of granting the requested relief.

### D. Public Interest

The final factor requires the Court to consider the public interest. *Dataphase*, 640 F.2d at 114. It is in the public's interest to "prevent[] customer confusion and infringement of trademarks." *See Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC*, 829 F. Supp. 2d 836, 847 (D. Minn. 2011) (quotation omitted); *see also Am. Dairy Queen*

*Corp. v. New Line Prods. Inc.*, 35 F. Supp. 2d 727, 733 (D. Minn. 1998) (describing public interest in trademark protection as "manifest"). The public interest also favors enjoining false and misleading advertising. *See Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016, 1028 (D. Minn. 2000). Moreover, "the public interest is always served by upholding copyrights and thereby encouraging individual effort and creativity." *Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856, 863 (D. Minn. 2000). Again, Michel's arguments regarding the public interest factor are not contested in this case. Therefore, like the other three *Dataphase* factors discussed above, the public interest also weighs in favor of the Court granting the requested relief.

## II.   BOND

The Court may issue a preliminary injunction "only if" the moving party "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The "amount of the bond rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion." *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976).

Michel asserts that "bond is not necessary" given "the substantial strength of its claims" and the fact that Ningbo will not sustain damages "as a result of being forced only to cease offering *infringing* marks and designs." (Doc. No. 16 at 52 (emphasis in original).) The Court agrees. Ningbo has not defended against this motion, let alone offered any argument to the contrary. Absent an objection to Michel's assertion or any showing that damages would result from the wrongful issuance of an injunction, the Court waives the

7

bond requirement. *See e.g.*, *Richard/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (explaining that exceptions to Rule 65(c)'s bond requirement "have been made where the defendant has not objected to the failure to require a bond or where the damages resulting from a wrongful issuance of an injunction have not been shown" (citations omitted)); *First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 769 (D. Minn. 2018) (waiving bond requirement where non-movant did not object and did not demonstrate potential damages).

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Plaintiff Michel Sales Company's Motion for a Preliminary Injunction (Doc. No. 14) is GRANTED as follows:

1. Defendants, their directors, members, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under it, are enjoined and restrained from:

    a. Use of any mark or designation confusingly similar or identical to Michel's DECKO family of marks, Michel's BUILT TO LAST marks, and Michel's trade dress.

    b. Use of any word, term, name, symbol, device, product configuration, product packaging, technical manual, user guide, textual content, product image, and any derivatives (or any combination thereof), or any other intellectual property or proprietary information that is identical, substantially similar, or confusingly similar to, or a colorable imitation or dilutive of, or containing, Michel's intellectual property as contained in its product catalogs and manuals registered with United States Copyright Registration Nos. #TX 9-390-864, #TX 9-390-866 and #TX 9-426-009.

    c. Use of any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' pump product with Michel's.

8

2.  Defendants, their directors, members, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under them, shall destroy and/or dispose of all materials in Defendants' possession, custody, or control that include, in whole or in part, any unauthorized use of Michel's intellectual property (including but not limited to, Michel's DECKO family of marks, Michel's BUILT TO LAST marks, Michel's trade dress, or Michel's Copyrighted Works).

3.  Defendants, their directors, members, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under it, shall take all necessary steps to remove from public view and access any and all materials that use, feature, or bear any Michel intellectual property (including but not limited to, Michel's DECKO family of marks, Michel's BUILT TO LAST marks, Michel's trade dress, or Michel's Copyrighted Works), or any false, misleading, or confusing reference to Michel or its product offerings, including but not limited to, on Amazon.com or any other e-commerce retail site, or on Defendants' own website, www.dekotool.com.

4.  Defendants, their directors, members, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under it, shall refrain from any and all use of Plaintiff's BUILT TO LAST and DECKO trademarks, or any phonetically similar terms (including DEKO and DEKOPRO), in the advertising, product title, product labeling, or product description of any water pump product on that is sold on Amazon.com, or any other e-commerce retail site, or on Defendants' own website, www.dekotools.com.

5.  Defendants, their directors, members, officers, agents, servants, employees, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under them, shall refrain from interfering with Michel's take-down submissions on Amazon.com (either filed through Brand Registry or otherwise), and are hereby prohibited from submitting any counter-notice or appeal to any of Michel's take-down submissions for removal of Defendants' products or ASINs from Amazon.com.

6.  No bond shall be required.

Dated:  December 9, 2024                                /s/ *Jeffrey M. Bryan*
                                                        Judge Jeffrey M. Bryan
                                                        United States District Court

9