## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michel Sales Company,                     File No. 24-CV-03657 (JMB/ECW)

        Plaintiff,

v.                                        **ORDER**

Ningbo GI Power Import & Export Co. Ltd.,
Ningbo GI Power Co. Ltd., Deko Group
LLC, and Deko Electric LLC,

        Defendants.

---

Ningbo GI Power Import & Export Co. Ltd.,

        Counterclaim Plaintiff,

v.

Michel Sales Company,

        Counterclaim Defendant.

---

Kristine M. Boylan, Anton Christopher Brown, Scott M. Rusert, and Tanner J. Sparrow, Taft Stettinius & Hollister LLP, Minneapolis, MN; Alex Matthews (*pro hac vice*), Mike Etienne (*pro hac vice*), and Neil Peluchette (*pro hac vice*), Taft Stettinius & Hollister LLP, Indianapolis, IN; for Plaintiff and Counterclaim Defendant Michel Sales Company.

Shawn M. Perry, Perry & Perry, PLLP, Wayzata, MN; Michael DiNardo (*pro hac vice*), YK Law LLP, Los Angeles, CA; for Defendant and Counterclaim Plaintiff Ningbo GI Power Import & Export Co. Ltd. and Defendant Ningbo GI Power Co. Ltd.

---

This matter is before the Court on Defendant and Counterclaim Plaintiff Ningbo GI

Power Import & Export Co. Ltd.'s and Defendant Ningbo GI Power Co. Ltd.'s (together,

"Ningbo") Motion to Dissolve Preliminary Injunction (Doc. No. 44), as well as Plaintiff

and Counterclaim Defendant Michel Sales Company's (Michel) Motion for Contempt (Doc. No. 51) and Motion for Default Judgment (Doc. No. 31). In this action, Michel brings claims against Ningbo, as well as Defendants Deko Group LLC and Deko Electric LLC (together, "Deko"), for copyright infringement, trademark infringement, trade dress infringement, deceptive trade practices, and unfair competition. (Doc. No. 12 [hereinafter, "Am. Compl."].) For the reasons explained below, the Court denies Ningbo's motion to dissolve the preliminary injunction, grants Michel's motion for contempt, and denies Michel's motion for default judgment against Deko.

## BACKGROUND

### A.    The Parties

Michel is a Minnesota company that opened its doors in 1857, as "Michel Family General Store." (Am. Compl. ¶¶ 1, 2.) Over the years, Michel has adapted its business, expanding into the plumbing and pump industries. (*Id.* ¶¶ 2, 3.) In 1989, Michel founded Decko Products (Decko) by an industry acquisition. (*Id.* ¶ 2.) A decade later, Michel and Decko formed Superior Pump Company. (*Id.*) Today, Michel sells and advertises its products on online marketplaces, such as Amazon.com. (*Id.* ¶ 30.) Michel owns various trademarks, copyrights, and product configuration (trade dress) rights. At issue here are the following: two trademarks (the DECKO® mark[1] and the BUILT TO LAST® mark[2];

---

[1] Codified in U.S. Trademark Registration No. 5,153,580 (registered on Mar. 7, 2017), U.S. App. No. 98545013, U.S. App. No. 98522359, U.S. App. No. 98522354, and U.S. App. No. 98522356. (Am. Compl. ¶¶ 9, 10, Ex. B at 87; Doc. No. 16-2 ¶ 3.)

[2] Codified in U.S. Trademark Registration No. 4,991,244 (registered on July 5, 2016). (Am. Compl. ¶ 9, Ex. B at 95.)

three copyrights covering product catalogs and manuals;[3] and trade dress rights in the product configuration of the "DECKO®" water pump.

Ningbo formed as a Chinese Limited Company in about 2013.  (Doc. No. 46-2 ¶ 6.) Ningbo distributes and sells various products, including hand tools, power tools, and related electric devices, such as pumps.  (*Id.*)  Ningbo brands its products with the DEKO and/or DEKOPRO trademarks.  (*Id.* ¶ 8.)  In around 2014, Ningbo began marketing, distributing, and selling its products on its website www.dekotools.com.  (*Id.*)  Between 2017 and 2021, Ningbo filed for and maintained at least seven U.S. trademark applications for the DEKO and DEKOPRO trademarks.  (*Id.* ¶ 9.)  Those trademarks are also registered in China.  (*Id.* ¶ 7.)[4]

### B.    Pre-Lawsuit Infringing Conduct and Michel's Enforcement Efforts

In 2023, Michel learned that Ningbo was copying its advertising materials and using them in Amazon listings to sell its competing pump product.  (Doc. No. 16-3 ¶ 4.)  Michel obtained samples of Ningbo's pump and learned that Ningbo was also copying its product manuals, product descriptions, and product configuration.  (*Id.*; Doc. No. 16-4 ¶ 7.)  Michel

---

[3] Codified in U.S. Copyright Registration Numbers TX 9-390-864 (registered on May 7, 2024), TX 9-390-866 (registered on May 7, 2024), and TX 9-426-009 (registered on Sept. 10, 2024).  (Am. Compl. ¶ 8, Ex. A at 2–8.)

[4] Deko is a Delaware Limited Liability Company that has not appeared in this matter.  (Am. Compl. ¶ 5; Doc. No. 29.)  Michel alleges that the four named Defendants are closely related corporate entities.  (Am. Compl. ¶¶ 4, 5.)  Ningbo contends that Defendant Ningo GI Power Co. Ltd. is not a separate entity but a shortened form of its full name "Ningbo GI Power Import & Export Co. Ltd."  (Doc. No. 46-2 ¶¶ 2, 4.)  It further contends that it "does not own or control" Deko and that it is not "intricately interlinked" with Deko.  (*Id.* ¶ 13.)  It asserts that, at most, Deko "might be" its customer.  (*Id.*)

also learned that Ningbo's pump displays a safety certification symbol when it does not have authority to use that symbol.  (Doc. No. 16-4 ¶ 8, Ex. 1.)  Michel's customer service personnel receive calls multiple times per week from individuals calling about Ningbo's products.  (Doc. No. 16-3 ¶ 13.)

In April 2024, Michel began using Amazon's enforcement channels to remove listings for Ningbo's competing pump product.[5]  (Doc. No. 16-3 ¶ 6; Doc. No. 54 ¶ 12; Doc. 46-2 ¶ 10.)  Initially, Amazon removed nearly all the listings.  (Doc. No. 54 ¶ 12; Doc. No. 46-2 ¶ 11.)  However, Ningbo challenged Michel's enforcement efforts and Amazon eventually reinstated the listings.[6]  (Doc. No. 54 ¶¶ 16–17; Doc. No. 46-2 ¶ 11.)  Shortly thereafter, in June 2024, Ningbo's first counsel wrote a cease-and-desist email to Michel, demanding that Michel "[w]ithdraw . . . all of the [Amazon] complaints against [Ningbo]."  (Doc. No. 16-2 at 5.)  Michel responded to this email, citing its priority in the DECKO mark. (Doc. No. 54-2.)  Ningbo never responded to Michel and continued to maintain its listings on Amazon.  (Doc. No. 54 ¶ 5.)

### C.    Initiation of this Action and Unopposed Preliminary Injunction Request

In September 2024, Michel filed suit.  (Doc. No. 1.)  On September 20, 2024, Michel attempted to serve its Initial Complaint on Ningbo through Ningbo's first counsel.  (Doc.

---

[5] All of the listings Michel sought to remove were from an Amazon seller named "Gulin." (Doc. No. 54 ¶¶ 18, 30.)  Ningbo identifies Gulin as one of its customers.  (Doc. No. 46-2 ¶ 16.)

[6] Ningbo acknowledges that it filed counter notices and appealed Amazon's decisions. (Doc. No. 46-2 ¶¶ 10–11.)  Given this acknowledgment, Michel's counsel asserts that Gulin and Ningbo are "one in the same."  (Doc. No. 54 ¶ 20.)

No. 54-3.)  That counsel declined to accept service on Ningbo's behalf, however, stating that their firm was "not representing Ningbo . . . in this case yet."  (Doc. No. 54-4.)

In October 2024, Michel filed an eight-count Amended Complaint, in which it alleged that Defendants are infringing two of its trademarks, three of its copyrights, and its trade dress rights.  (*See* Am. Compl.)  Michel further alleges that Defendants are misrepresenting that their goods are of a particular standard, quality or grade, in violation of the Minnesota Deceptive Trade Practices Act, and that they are unfairly competing with Michel, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (*Id.*)

On the same day Michel filed its amended complaint, it also filed a motion for a preliminary injunction.  (Doc. No. 14.)  On November 18, 2024, one day before the Court's hearing on the motion for preliminary injunction, a second counsel for Ningbo contacted Michel's counsel, stating that he was aware of the action and was "in the process of being retained by Ningbo" but that he was "not presently authorized to accept service" of process on Ningbo's behalf and was "not in a position to appear at the hearing."  (Doc. No. 54-5; *see also* Doc. No. 46-3 ¶ 3.)  That counsel also communicated his position that Ningbo was not properly served and was not connected to Deko.  (Doc. No. 54-5.)[7]  None of the Defendants appeared at the hearing, and the Court granted the unopposed motion for preliminary injunction.  (Doc. No. 30.)  Among other conduct, the Court enjoined Defendants from using "any mark or designation confusingly similar or identical to Michel's DECKO family of marks, Michel's BUILT TO LAST marks, and Michel's trade

---

[7] Deko did not respond to the amended complaint or the preliminary injunction motion, despite service of these pleadings.  (*See* Doc. Nos. 19, 20, 24, 25, 28.)

dress," as well as from using any "intellectual property or proprietary information that is identical, substantially similar, or confusingly similar to, or a colorable imitation or dilutive of, or containing, Michel's intellectual property." (*Id.* at 8.) The Court also enjoined Defendants "from interfering with Michel's take-down submissions on Amazon.com" and "from submitting any counter-notice or appeal to any of Michel's take-down submissions for removal of Defendants' products or ASINs from Amazon.com." (*Id.* at 9.) Defendants were also ordered to "take all necessary steps to remove from public view and access any and all materials that use, feature, or bear any Michel intellectual property . . . or any false, misleading, or confusing reference to Michel or its product offerings." (*Id.*)

### D.    Ningbo's Challenge to the Enforceability of the Preliminary Injunction and Michel's Ongoing Enforcement Efforts

Since the Court issued the preliminary injunction, Ningbo has continued to file appeals with Amazon. (Doc. No. 54 ¶¶ 14–17.) Consequently, Michel has taken steps to enforce the preliminary injunction and remove the infringing products. (*Id.* ¶¶ 14–17, 22; Doc. No. 54-10.)  In late January 2025, Amazon permanently removed the listings that Michel reported. (Doc. No. 54 ¶ 23.) On or around February 11, 2025, after Amazon shut down Gulin, a new Amazon seller called "DEKOPRO" started selling the same infringing product. (Doc. No. 54-15.) The DEKOPRO seller page states an affiliation with Deko Electric (US),[8] sells only DEKO/DEKOPRO products, and bears Ningbo's DEKOPRO brand name and US registered trademark. (Doc. No. 54 ¶¶ 32, 33.)

---

[8] "Deko Electric LLC" is a named defendant.

As of January 16, 2025, the infringing product had also not been removed from Ningbo's website www.dekotools.com. (*Id.* ¶ 25.) Consequently, Michel filed a takedown notice form with the website host. (*Id.* ¶ 26; Doc. No. 54-12.) On February 6, 2025, the website host informed Michel that the content on the website was removed. (Doc. No. 54-13.) On February 11, 2025, the website host notified Michel that the merchant had filed an appeal but that the content would remain offline. (Doc. No. 54-14.) The address listed by the merchant in the appeal is the same as Ningbo's "current address for business operations." (*Id.* at 3; Doc. No. 46-2 ¶ 5.) After Michel began taking these steps to enforce the preliminary injunction and moved for default judgment against Ningbo and Deko (Doc. No. 31), Ningbo appeared as a party (Doc. No. 37; Doc. No. 64 ¶ 8) and filed an Answer and Counterclaims (Doc. Nos. 39, 40).

## DISCUSSION

Ningbo now moves to dissolve the preliminary injunction. (Doc. No. 44.) Michel moves for contempt (Doc. No. 51) and default judgment (Doc. No. 31). Each motion is addressed in turn.

## I.    MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION

Ningbo moves to dissolve the preliminary injunction for lack of proper service, arguing that it was not yet a party to the case. (Doc. No. 46 at 18–22; Doc. No. 73 at 4.) Alternatively, Ningbo moves to dissolve the preliminary injunction under Federal Rule of Civil Procedure 60(b). (Doc. No. 46 at 23–36.) For the following reasons, the Court declines to dissolve the preliminary injunction on these grounds.

7

Courts have discretion to modify or dissolve a preliminary injunction. *See Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 431 (8th Cir. 1983). "In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason." *Id.* at 430. The party seeking to alter the preliminary injunction must make this showing. *See id.*

### A.    Service

Ningbo first contends that the Court should dissolve the preliminary injunction for lack of proper service on Deko and failure to properly notify Ningbo. (Doc. No 46 at 18–22; Doc. No. 73 at 3–6; Doc. No. 68.)

Federal Rule of Civil Procedure 65(a) provides that a "court may issue a preliminary injunction only on notice to the adverse party." Federal Rule of Civil Procedure 65(d) further provides that a court can enjoin a nonparty that "receive[s] actual notice of [the preliminary injunction] by personal service or otherwise" and is "in active concert or participation with" a party to the action. The Court concludes that Deko is a party to this action and, although Ningbo was a nonparty when the Court issued the preliminary injunction, because Ningbo had actual notice of the preliminary injunction and was in active concert and participation with Deko (a party to the action), Rule 65(d) has been satisfied as to both Deko and Ningbo.

## 1.    *Service on Deko*

Ningbo first argues that Deko is not a party to this action because, as a canceled entity, it cannot be served through a registered agent.  (*See* Doc. No. 68; *see* Doc. Nos. 19, 20, 24, 25.)  The Court disagrees with Ningbo's contention for two reasons.  First, Ningbo cannot challenge service of process on a codefendant.  *See, e.g.*, *Everett v. Miller*, 67 A.2d 399, 400 (D.C. Mun. Ct. App. 1949) (reasoning that a defendant lacks standing to question service on a codefendant and reversing order quashing service because "the service may not be quashed on motion of persons who are not parties to the action and who have been refused the right to intervene").

Second, based on the record before it and Delaware law, Deko remained a Delaware company whose registered agents could be served.  The Court observes that under Delaware law, a limited liability company wishing to dissolve must file a certificate of cancellation with the Secretary of State after it has completed the wind-down process.  Del. Code tit. 6, § 18-203.  Then, after the company's certificate of formation has been canceled pursuant to Section 18-203, the Court of Chancery may, on application, appoint one or more managers or other persons to act as trustees or receivers with the power to defend a lawsuit against the former liability company.  Del. Code tit. 6, § 18-805.  This is so because after a limited liability company has been canceled, under Section 18-805, the defunct entity "cannot otherwise make any decisions or take any action."  *In re Reinz Wis. Gasket, LLC*, No. 2022-0859-MTZ, 2023 WL 3300042, at *2 (Del. Ch. May 8, 2023).  Consequently, there are "idiosyncrasies" of litigating against a defunct entity, including the

inability to serve the entity through a registered agent. *See In re VBR Agency, LLC*, 274 A.3d 1068, 1076 (Del. Ch. 2022).

However, a company's certificate of formation can also be canceled for failure to pay taxes. When this type of cancellation occurs, the company continues to exist, and no receivers are appointed to replace the registered agents. *See* Del. Code tit. 6, § 18-1107(k) (providing that "[a] domestic limited liability company that has ceased to be in good standing" due to its "neglect, refusal or failure to pay an annual tax shall remain a domestic limited liability company formed under this chapter"); *see also* Del. Code tit. 6, § 18-1108(a) (noting that a domestic limited liability company's certificate of formation shall be canceled if the annual tax due is not paid for a period of three years); *Trusa v. Nepo*, No. 12071-VCMR, 2017 WL 1379594, at *7 (Del. Ch. Apr. 13, 2017) (distinguishing between "the filing of a certificate of cancellation and the automatic cancellation of a certificate of formation").

Here, Ningbo asserts that Deko was canceled for failure to pay taxes. (Doc. Nos. 69-1, 69-2.) However, there is no evidence presented to the Court that Deko has completed the dissolution and wind-down process or that Deko filed a certificate of cancellation with the Delaware Secretary of State. Absent such evidence, pursuant to Delaware law, Deko "remain[s] a domestic limited liability company." Del. Code tit. 6, § 18-1107(k). In addition, Michel properly served Deko's registered agent. (*See* Doc. Nos. 19, 20, 24, 25.) Therefore, Deko is a party to this action.

## 2.    *Binding Effect of Preliminary Injunction on Ningbo*[9]

Ningbo next argues that due process was not satisfied because Michel had not formally served Ningbo with the amended complaint or motion for preliminary injunction. (Doc. No. 46 at 20.)  The Court agrees that Michel did not serve Ningbo; however, the plain language of Rule 65(d) "makes it clear that the amenities of original process need not be followed" to enjoin a nonparty.  *United States v. Smith*, 502 F. Supp. 2d 852, 855 (D. Minn. 2007) (quotation omitted); *see* Fed. R. Civ. P. 65(d)(2) (noting that a preliminary injunction binds those "who receive actual notice of it by personal service *or otherwise*" and "are in active concert or participation with" a party) (emphasis added).

In *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, the Seventh Circuit considered whether the district court erred by issuing injunctive relief before formal service of process or the appearance of defense counsel.  The Seventh Circuit reasoned that the district court had not erred because "the plain language of Rule 65 . . . permits the issuance of a preliminary injunction 'only on notice,' or the issuance of a temporary restraining order in some cases without 'written or oral notice to the adverse party or its attorney.'"  694 F.3d

---

[9] The Court is concerned that Ningbo has waived its ability to challenge service of process by not raising this defense in its Answer.  (*See* Doc. No. 39); *see also* Fed. R. Civ. P. 12(h)(1) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . failing to . . . make it by motion under this rule; or . . . include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."); *Photolab Corp. v. Simplex Speciality Co.*, 806 F.2d 807, 810 (8th Cir. 1986) ("[Rules] 12(g) and (h) provide that objections to insufficiency of process or insufficiency of service of process are waived unless the objections are raised in the answer or by motion before the filing of a responsive pleading.") In light of the Court's decision that the preliminary injunction properly enjoins Ningbo's conduct under Rule 65(d), the Court need not also determine whether Ningbo waived this argument by not including it in its Answer.

827, 842 (7th Cir. 2012) (quoting Fed. R. Civ. P. 65(a), (b)(1)).  It further reasoned that the defendant and its counsel "had actual notice of the hearing on [plaintiff's] motion for a TRO and chose not to participate," which "was their right, but [that] their choice did not deprive the court of the power to issue a TRO." *Id.*  Finally, it reasoned that "Rule 65 allows emergency injunctive relief before service of process" because "formal service of process under the Hague Convention or other provisions of law can take months," which "would have the unfortunate effect of immunizing most foreign defendants from needed emergency injunctive relief." *Id.*  Courts in other circuits have followed this line of reasoning. *See Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536 (5th Cir. 2023), *cert. denied sub nom. Shenzen Sanlida Elec. Tech. Co., Ltd. v. Whirlpool Corp.*, 144 S. Ct. 807 (2024) (mem.) (noting that district court had power to enter preliminary injunction on a foreign business entity accused of trademark infringement who had not been served under the Hague Convention and who had not entered a voluntary appearance because the nonparty undisputedly received sufficient notice of the motion for a preliminary injunction and attended the motion hearing); *see also SEC v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281, at *2–3 (11th Cir. Apr. 8, 2024); *Padgett v. Vilsack*, No. 24-CV-02954 (CRC), 2024 WL 5283897, at *3 (D.C.C. Nov. 8, 2024); *Sogefi USA, Inc. v. Interplex Sunbelt, Inc.*, 538 F. Supp. 3d 620, 626–27 (S.D. W. Va. 2021).  The Court adopts this persuasive analysis.

Based on the record before it, the Court also concludes that Ningbo had actual notice of this action since September 2024 when Michel attempted to serve the initial complaint on Ningbo's first counsel who declined to accept service on Ningbo's behalf.  (*See* Doc.

No. 54-3; Doc. No. 54-4.)  Ningbo also had actual notice of the amended complaint and motion for preliminary injunction prior to the hearing on November 19, 2024, as evidenced by Ningbo's counsel contacting Michel's counsel on November 18, 2024, one day before the hearing, acknowledging actual notice of the action and the preliminary injunction. (Doc. No. 54-5; Doc. No. 46-3 ¶ 3.)  Ningbo's decision not to participate in that hearing did not deprive the Court of its power to issue injunctive relief.  Finding otherwise would have the "unfortunate effect" of immunizing Ningbo from needed emergency injunctive relief.  *See H-D Michigan*, 694 F.3d at 842.

Finally, the Court concludes that Ningbo acted in concert and participation with Deko.  The Court notes that since Michel's counsel began filing takedown notices for DEKO/DEKOPRO water pumps, the Amazon seller listed on each Amazon Standard Identification Number (ASIN) has only ever been an entity called "Gulin."  (Doc. No. 54 ¶¶ 18, 30.)  Ningbo's first counsel previously acknowledged that Michel's counsel had "brought a number of complaints for suspending certain ASINs for our client [referring to Ningbo]."  (Doc. No. 54-1 at 2.)  Ningbo's first counsel "filed counter notices and appealed the [takedown] decision[s] with Amazon.com" on behalf of Ningbo, even though those ASINs listed to Gulin.  (Doc. No. 46-2 ¶¶ 10–11.)  This suggests that Ningbo and Gulin are one and the same and that Ningbo's counsel was responsible for appealing takedowns of Gulin's ASINs.  In addition, Ningbo and Gulin share a common registered agent in Delaware and the same address (with a different suite number).  (Doc. No. 54-9 at 3–4.)

Further, the record supports a connection between the Deko defendants and Ningbo. For instance, import records show that both Deko defendants have imported products

13

(including pumps) from Ningbo.  (*Id.* at 4, 5.)  The record also supports a conclusion that Ningbo owns the DEKO/DEKOPRO trademarks that are at use in the infringing conduct.  (Doc. No. 46-2 ¶ 9.)  Ningbo's website www.dekotools.com markets itself as having "DEKO Warehouses" in the United States.  (Doc. No. 54-9 at 3; Doc. No. 46-2 ¶ 8.)  Furthermore, after Gulin was suspended in relation to three ASINs remaining on Amazon.com, a new Amazon seller called "DEKOPRO" started selling those ASINs.  (Doc. No. 54 ¶ 31; Doc. No. 54-15.)  That DEKOPRO seller account states an affiliation with Deko Electric (US) and bears Ningbo's brand name and US registered trademark.  (*Id.* ¶¶ 32, 33; Doc. No. 54-15.)  Finally, Ningbo's current address, No. 555 Rili Middle Rd., Yinzhou Dist., Room 1801, Ningbo, 315000, China, is the same as the address listed for the merchant who challenged the website host's removal of several listings on www.dekotools.com, in violation of the preliminary injunction.  (Doc. No. 46-2 ¶ 5; Doc. No. 54-14 at 3.)  The Court finds that this evidence is sufficient to establish the Defendants' relatedness, and that Ningbo acted in concert and participation with Deko.[10]

---

[10] On August 27, 2025, Michel filed a letter to the Court asserting that Ningbo's "Director of Western Operations" who appeared as Ningbo's representative at a mediation on August 26, 2025, is also listed as the "Directory, Secretary, and Treasurer" for Deko Inc. in documents filed with the Wyoming Secretary of State.  (Doc. No. 90.)  Ningbo's counsel objects to the Court's consideration of this information but does not dispute it.  (Doc. No. 91.)  Given the evidence presented to the Court prior to the August 27, 2025 letter, the Court need not determine whether Ningbo's Director of Western Operations is still an officer of Deko Inc., as indicated by the corporate documents on file with the Wyoming Secretary of State, or whether this fact establishes that Ningbo acted in concert with Deko for purposes of Rule 65(d).

The Court therefore denies Ningbo's motion to dissolve the preliminary injunction on procedural grounds.

**B.    Rule 60(b)**

Ningbo also contends that the Court should dissolve the preliminary injunction pursuant to Federal Rule of Civil Procedure 60(b).  (Doc. No. 46 at 23–36.)  For the following reasons, the Court declines to dissolve the preliminary injunction on this ground.

Under Federal Rule of Civil Procedure 60(b), a party may seek relief from a final judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Rule 60(b) motions "serve the limited function of correcting manifest errors of law or fact or . . . present[ing] newly discovered evidence."  *United States v. Luger*, 837 F.3d 870, 875 (8th Cir. 2016) (quotation omitted).  The party seeking to dissolve a preliminary injunction bears the burden of showing that changed circumstances warrant relief.  *See Horne v. Flores*, 557 U.S. 433, 447 (2009); *see also Movie Sys.*, 717 F.2d at 430; *Stringer-El v. Nix*, 945 F.2d 1015, 1016 (8th Cir. 1991) (noting that the party seeking to dissolve must "show that new argument or facts brought forward after judgment could not have been made prior to judgment").  Rule 60(b) "is not a vehicle for simple re-argument on the merits."

*Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999). Courts should deny such requests "where a party relies upon events that actually were anticipated at the time [the order was entered]." *Agostini v. Felton*, 521 U.S. 203, 217 (1997) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 385 (1992) (alternation in original)).

Ningbo contends that "at least one or more" of the following four grounds applies: (1) mistake or excusable neglect; (3) misrepresentation or misconduct by Michel; (5) applying the judgment prospectively is no longer equitable; and/or (6) any other reason that justifies relief." (Doc. No. 46 at 20.) Ningbo proceeds to make arguments that pertain only to numbers (3) and (5). (*Id.* at 20–22.) The Court declines to consider the remaining grounds absent developed arguments from Ningbo on them.

Ningbo first contends that Rule 60(b) applies due to misrepresentation or misconduct because Michel has misrepresented Ningbo's connection to Deko. (*Id.* at 22.) For the reasons stated in Section I.A.2, above, the Court disagrees. It does not appear that Michel has misrepresented the connection, as the evidence supports that Ningbo acted in concert or participation with Deko.

Ningbo also argues that Rule 60(b) applies because the preliminary injunction is no longer equitable. Specifically, Ningbo reiterates its procedural objection to the preliminary injunction (*id.* at 21), an argument that the Court has rejected in Section I, above. Ningbo also argues that the *Dataphase* factors are not satisfied. (*Id.* at 23–36.) In making this argument, Ningbo relies on law and evidence that existed prior to the issuance of the preliminary injunction that Ningbo could have raised at the time of the motion hearing if it had chosen to participate in that hearing. Ningbo offers no explanation for why it could

16

not have made these arguments prior to the Court's issuance of the preliminary injunction. Absent any argument that the facts or law Ningbo presents to challenge the Court's prior determination on the *Dataphase* factors did not exist or could not have been brought before the hearing on the motion for a preliminary injunction, the Court rejects this argument.

In sum, the Court denies Ningbo's motion to dissolve the preliminary injunction pursuant to Federal Rule of Civil Procedure 60(b).

## II.    MICHEL'S MOTION FOR CONTEMPT

Michel moves for an order holding Defendants in contempt of the preliminary injunction. (Doc. No. 53 at 14.)  Because Michel has established each of the three elements required for holding a party in contempt, the Court grants Michel's motion.

Courts have "inherent power to enforce compliance with their lawful orders through civil contempt."  *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  "[A] nonparty with actual notice may be held in contempt where the nonparty aids or abets a named party in a concerted violation of a court order."  *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998).  The party moving for contempt must prove, by clear and convincing evidence, that the alleged contemnor violated the court's order.  *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000).  Courts typically address motions for contempt in two steps.  The Court addresses these steps in turn.

### A.    Michel's Burden to Establish the Elements of Contempt

Under the first step, the movant must show the following three elements: (1) the existence of a valid order; (2) that the alleged contemnor had knowledge of that order; and (3) that the alleged contemnor disobeyed that order.  *United States v. Thornton*, No. 13-

MC-0087 (SRN/TNL), 2015 WL 1522245, at *2 (D. Minn. Mar. 27, 2015) (citing *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998)). The Court's analysis in Section I also applies to the first two elements, and given the reasoning underlying the decision not to dissolve the preliminary injunction, the Court necessarily concludes that the preliminary injunction is valid.[11] Likewise, based on the reasoning in Section I, the Court also necessarily concludes that Deko and Ningbo had knowledge of the preliminary injunction.[12]

Turning to the third element, the Court concludes that Deko and Ningbo have failed to comply with the injunction.[13] More specifically, the Court finds that they defied the preliminary injunction in the following two ways: (1) by appealing Michel's takedown notices on Amazon; and (2) by not removing content from www.dekotools.com and Amazon. The Court addresses each violation in turn.

The preliminary injunction enjoined Defendants "from submitting any counter-notice or appeal to any of Michel's take-down submissions for removal of Defendants' products or ASINs from Amazon.com." (Doc. No. 30 at 9.) The Court finds that since the issuance of the preliminary injunction, Ningbo has continued to submit appeals and counter notices to Michel's takedown submissions, in violation of the preliminary injunction. (Doc.

---

[11] Ningbo does not contest the validity of the injunction on the basis that it lacks sufficient specificity or for any reasons not already addressed in Section I. *See, e.g.*, *Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Ctr., Inc.*, 564 F.2d 816, 820 (8th Cir. 1977) (addressing specificity of a preliminary injunction under this first element).

[12] Ningbo does not contest this second element.

[13] The following findings pertain to both defendants.

No. 54 ¶¶ 15–20 (listing efforts to takedown nearly fifty different ASINs covered by the preliminary injunction.)    One example from Michel's supporting submissions is particularly illustrative: "ASIN B09ZV2GB71 was reported on December 11 and removed by Amazon. However, Defendants successfully appealed—while fully aware of this Court's injunction order—and the ASIN was put back online." (*Id.* ¶ 16.)  The Court finds that this conduct directly violates the terms of the preliminary injunction.

The preliminary injunction also ordered Defendants to "take all necessary steps to remove from public view and access any and all materials that use, feature, or bear any Michel intellectual property . . . or any false, misleading, or confusing reference to Michel or its product offerings, including but not limited to, on Amazon.com . . . or on Defendants' own website www.dekotool[s].com." (Doc. No. 30 at 9.)    Ningbo admits that www.dekotools.com is its website. (*See* Doc. No. 46-2 ¶ 8.)  In addition, the Court finds that on January 17, 2025, Michel's counsel filed a takedown notice form with the www.dekotools.com website host and emailed the website host a copy of the preliminary injunction because Defendants had not removed DEKOPRO/DEKO water pumps from Ningbo's website. (Doc. No. 54 ¶ 25; Doc. No. 54-12.)  The Court further finds that, on February 6, 2025, the website host removed that content of Ningbo's website. (Doc. No. 54-13.)  Then, on February 11, 2025, the website host informed Michel's counsel that the website merchant had appealed Michel's takedown notice. (Doc. No. 54-14.)  The website merchant's address listed on the appeal is the same as Ningbo's address. (*Compare id.* at 3, *with* Doc. No. Doc. No. 46-2 ¶ 5.)  Additionally, the Court finds that after Amazon took action to remove three of Gulin's ASINs, a new Amazon seller called "DEKOPRO" started

selling those ASINs. (Doc. No. 54 ¶ 31; Doc. 54-15.) The DEKOPRO seller states an affiliation with "Deko Electric (US)" and bears Ningbo's brand name and US registered trademark. (Doc. No. 54 ¶¶ 32–33.) Based on these factual findings, the Court concludes that Defendants failed to comply with the preliminary injunction when they did not take all necessary steps to remove from their website the references required by the preliminary injunction.

For all of these reasons, the record contains clear and convincing evidence that Ningbo has violated the terms of the preliminary injunction, and the Court concludes that Michel has satisfied its burden.

### B.    Defendants' Burden to Establish Elements Excusing Violative Conduct

If the movant satisfies the first step, the burden shifts to the alleged contemnor to show the following three elements, which can excuse violative conduct: (1) the alleged contemnor was unable to comply with the court order at issue; (2) the inability to comply "was not self-induced"; and (3) the alleged contemnor "made in good faith all reasonable efforts to comply." *United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 736 (8th Cir. 2001) (quotation omitted). Defendants have not offered any evidence to satisfy their burden on any of these three elements.

Thus, Defendants have not satisfied their burden, and the Court grants Michel's motion for contempt.

### C.    Relief

"Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chicago*

*Truck Drivers*, 207 F.3d at 505 (citation omitted).  The Court has broad discretion "to design a remedy that will bring about compliance."  *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 913 (D. Minn. 2007) (quotation omitted).  Michel is requesting relief in the form of disgorgement, modification of the preliminary injunction, and an award of attorney fees and costs incurred regarding noncompliance with the preliminary injunction.  Given the ongoing nature of noncompliance with the preliminary injunction, Michel shall submit a specific request for relief and a proposed order, including supporting documentation, to establish the amounts of disgorgement and the award of attorney fees and costs, as well as the specific modifications requested to the preliminary injunction.

## III.    MICHEL'S MOTION FOR DEFAULT JUDGMENT

Michel moves for default judgment against Deko.  (*See* Doc. No. 31; *see also* Doc. No. 60 at 7–9.)[14]  Because the better practice is to withhold granting a default judgment against Deko given Ningbo's appearance, the Court denies this motion.

The district court has discretion in determining whether to enter a default judgment.  *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015).  Because there is a "judicial preference for adjudication on the merits," the law generally disfavors default judgments.  *Id.* (citation omitted).  Under Federal Rule of Civil Procedure 55, courts may issue judgment against a party based on the Clerk of Court's entry of default, provided that

---

[14] Michel initially moved for default judgment against Ningbo and Deko even though it had not served Ningbo.  (Doc. Nos. 31, 33.)  In light of Ningbo's voluntary appearance in this action, Michel now asks the Court to grant default judgment only as to Deko but to withhold entering the judgment until the conclusion of the case.  (Doc. No. 60 at 7–9.)

the unchallenged facts constitute a legitimate cause of action. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, "[w]hen co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment." *Angelo Iafrate Contr., LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)). "To avoid such inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party." *Id.* Therefore, "'the better practice' is to withhold granting a default judgment until the action is resolved on the merits against the remaining non-defaulting defendants." *Auto-Owners Ins. Co. v. Six One Two Constr., LLC*, No. 14-CV-1174 (SRN/LIB), 2014 U.S. Dist. LEXIS 110270, at *3 (D. Minn. Aug. 11, 2014) (quoting *Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432 (8th Cir. 1992)); *see also* 10A *Wright and Miller's Federal Practice and Procedure* § 2690 (4th ed. 2025) ("As a general rule then, when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.")

Given Michel's contention that Ningbo and Deko are interlinked and may be jointly and severally liable to Michel (Doc. No. 60 at 5–7), and in order to avoid inconsistent judgments, the Court declines to enter judgment against Deko at this time. Michel may renew its request for default judgment against Deko once its claims against Ningbo have been resolved. This motion is denied.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT

IS HEREBY ORDERED THAT:

1. Defendant and Counterclaim Plaintiff Ningbo GI Power Import & Export Co. Ltd.'s Motion to Dissolve Preliminary Injunction (Doc. No. 44) is DENIED.

2. Plaintiff and Counterclaim Defendant Michel Sales Company's Motion for Contempt (Doc. No. 51) is GRANTED.

3. Plaintiff and Counterclaim Defendant Michel Sales Company shall, on or before November 17, 2025, submit to this Court a request for relief and supporting documentation, along with a proposed order including specific amounts of disgorgement and the award of attorney fees and costs as well as the specific modifications requested to the preliminary injunction.

4. Plaintiff and Counterclaim Defendant Michel Sales Company's Motion for Default Judgment (Doc. No. 31) is DENIED.

Dated: September 26, 2025

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court